# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| MARQUISE D. STREET,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMIE HILL, in his individual capacity and official capacity, JOHN DOES, in their individual and official capacities, E. NEAL JUMP, in his individual and official capacity, and GLYNN COUNTY, GEORGIA,<br><br>    Defendants. | 2:24-CV-115 |

## ORDER

Before the Court is Defendant Deputy Jamie Hill's motion to dismiss.[1] Dkt. No. 18. This motion has been fully briefed, and a hearing was held on June 18, 2025. Dkt. Nos. 18, 23, 25, 26. Plaintiff asserts claims against Deputy Hill for excessive force in violation of the Fourth and Fourteenth Amendments (Count I) and

---

[1] Plaintiff's complaint incorrectly spells Defendant Hill's name as Jaimie. See generally Dkt. No. 1.

violation of Plaintiff's First Amendment free expression right (Count III).[2] Dkt. No. 1.

## BACKGROUND

This case arises from Plaintiff Marquise Street's imprisonment at Glynn County Detention Center ("GCDC") in Brunswick, Georgia. Id. Plaintiff alleges that on October 8, 2022, while he was an inmate at GCDC, he was "violently attacked" by GCDC detention officers "for no reason." Id. ¶ 12. Specifically, Plaintiff asserts that Defendant Hill "brutalize[d] him 'without any reason'" and used excessive force while other detention officers observed and failed to intervene. Id. ¶ 30. Plaintiff "protested the unwarranted attack," which "seemed to anger" the detention officers more. Id. ¶¶ 13-14.

GCDC provides inmates with a procedure to file grievances about conditions, policies, procedures, or actions directed towards GCDC inmates. Dkt. No. 15-2 at 6. Inmates can file a grievance via the inmate Kiosk, where the inmate must complete the grievance form detailing the complaint, "date, time, explanation of events, and names of those involved." Dkt. No. 15-3 at 1. Grievances must be filed within five days from the date the inmate "discovered, or reasonably should have discovered, the

---

[2] Plaintiff's complaint does not include a Count II. Id. Although Plaintiff's First Amendment claim is technically the second count of the complaint, the Court refers to it as Count III in alignment with Plaintiff's complaint.

circumstances giving rise to the complaint and was able to file the grievance." Dkt. No. 15-2 at 7. Then, the Grievance Committee[3] has fifteen days to investigate, review, and respond to the grievance. Id. at 8. After the inmate receives a formal response to his grievance, he has three days to accept the findings and action taken or to file an appeal to the Jail Administrator. Id. If the inmate chooses to appeal, then he must provide written reasons for doing so on the grievance form and return it to the Grievance Coordinator. Id.

During his 2022 incarceration at GCDC, Plaintiff filed 122 inmate grievances, including two about the alleged attack by Deputy Hill. Dkt. No. 15-1 ¶ 11. The first grievance about the assault, Grievance No. 628388, was filed on October 14, 2022, and stated "I BEEN ASSAULTED BY OFFICER HILL IN I WOULD LIKE THE SHERIFF TO LOOK INTO THIS MY NOSE IS BROKEN BECAUSE OF THIS." Dkt. No. 15-4 at 195. Three days later, on October 17, 2022, Sheriff Jump replied to the grievance and said, "THIS INVESTIGATION IS BEING HANDLED BY THE STATE GBI AGENCY." Id. Plaintiff did not file an appeal. Id. at 196. On October 17, 2022, Plaintiff filed another grievance, Grievance No. 628640, which read "I BEEN ASSAULTED BY AN OFFICER I NEED SHERIFF TO LOOK INTO THIS MY NOSE BROKE IM NOT GETTING NO

---

[3] The Grievance Committee consists of the Assistant Jail Administrator, the Lieutenant for Security, and the Lieutenant for Programs. Dkt. No. 15-2 at 8.

MEDICAL TREATMENT IN ITS HURTING IN I CAN NOT BREATH." Id. at 205.
In response, an officer detailed Plaintiff's medical care for him.
Id. Specifically, the response states that Plaintiff was seen by
medical staff on October 8, 2022 and October 11, 2022. Id. It
further states that on October 11, 2022, Plaintiff went to the
hospital for x-rays and on October 12, 2022, he was seen by a
medical provider who discussed the x-rays, prescribed medication,
and referred him to an outside specialist. Id. On October 25, 2022,
Plaintiff appealed the officer's findings and claimed that while
he was getting medical treatment by receiving medication, his nose
was not popped "back in place." Id. at 196. The jail responded
that the Plaintiff's x-ray did not show that Plaintiff's nose was
"out of place" and needed to be "'put back.'" Id. Plaintiff filed
several other grievances asserting complaints about injuries to
his nose and shoulder. See, e.g., id. at 213, 219, 223, 225, 227,
235, 237, 239. Plaintiff's x-ray reports reflect that he had a
"nondisplaced nasal bone fracture," but no visible fracture line
or suspicious findings on his shoulder. Dkt. No. 15-5 at 1–2.

Plaintiff's complaint contains seven counts, but only three
against Defendant Hill.[4] Specifically, Plaintiff brings claims
against Deputy Hill in both his official and individual capacities

---

[4] The Court previously dismissed Defendants Glynn County and
Sheriff Jump from this action. Dkt. No. 27. Furthermore, Defendants
John Does were never identified and thus were unable to be served.
Dkt. No. 10.

4

for excessive force in violation of the Fourth Amendment (Count I(a)), id. at 4, excessive force in violation of the Fourteenth Amendment (Count 1(b)),[5] id. at 14, and violation of Plaintiff's First Amendment freedom of speech rights (Count III), id. at 6.

Plaintiff's complaint also contains allegations against several unnamed detention officers, the John Doe Defendants, for failure to intervene in violation of the Fourth and Fourteenth Amendments (Count IV and V), id. at 7-8, and deliberate indifference to a serious medical need in violation of the Fourth and Fourteenth Amendments (Count VI and VII), id. at 9, 11. However, Plaintiff never identified the John Doe Defendants and, thus, never served them. Dkt. No. 10.

Plaintiff was arrested by Glynn County Police Department on August 14, 2024, and was being held at GCDC when he filed suit on October 6, 2024. Dkt. Nos. 15-6 at 1; 15-2 at 4. Deputy Hill moved to dismiss the claims against him on January 24, 2025. Dkt. No. 18. Plaintiff responded to Deputy Hill's motion to dismiss on February 21, 2025, dkt. no. 23, and Deputy Hill replied on March 7, 2025, dkt. no. 25.

**LEGAL AUTHORITY**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing

---

[5] Plaintiff's complaint has two counts labeled as "Count One." The Court separates them into Counts I(a) and I(b). Dkt. No. 1 at 5.

that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). The Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678-79.

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec.

Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The Court need not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

**DISCUSSION**

Deputy Hill moves to dismiss the individual capacity claims against him on the grounds that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA) before filing his complaint. Dkt. No. 18 at 4-11. Further, Deputy Hill seeks to dismiss the claims against him

7

in his official capacity on the basis of Eleventh Amendment immunity. Dkt. No. 18 at 9. The Court addresses each in turn below.

## I.    Prison Litigation Reform Act

Under the PLRA, a prisoner is required to exhaust administrative remedies prior to bringing an action with respect to prison conditions. 42 U.S.C. § 1997e(a). According to the Eleventh Circuit, a defense of failure to exhaust administrative remedies is treated as a matter in abatement. Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008)). In other words, "procedurally the defense is treated like a defense for lack of jurisdiction, although it is not a jurisdictional matter." Id. (citation and quotations omitted). Importantly, an inmate does not have to plead exhaustion in his complaint; instead, the failure to exhaust is an affirmative defense raised by defendants. Jones v. Bock, 549 U.S. 199, 216 (2007).

"[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." Id. at 218 (internal citation and quotations omitted). Put differently, "all that is required by the PLRA to 'properly exhaust'" claims is "[c]ompliance with the prison grievance procedures." Id. "Proper" exhaustion means that an inmate must take all the steps in the administrative

8

process; "if their initial grievance is denied, prisoners must then file a timely appeal." Bryant, 530 F.3d at 1378 (citation omitted). The mandatory language regarding exhaustion under the PLRA "means a court may not excuse a failure to exhaust," even for "'special circumstances.'" Ross v. Blake, 578 U.S. 632, 639 (2016); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Thus, if a Plaintiff fails to exhaust his remedies, then "[a] district court must dismiss the suit." Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004).

The Eleventh Circuit has provided a two-step analysis for deciding a motion to dismiss for failure to exhaust administrative procedures under the PLRA:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed . . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

Turner, 541 F.3d at 1082. Also, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits

and the parties have sufficient opportunity to develop a record."[6]
Bryant, 530 F.3d at 1376.

Deputy Hill moves to dismiss Plaintiff's claims against him
in his individual capacity on the basis that Plaintiff failed to
exhaust his administrative remedies under the PLRA. Dkt. No. 18 at
4. In response, Plaintiff does not contest that he failed to
exhaust GCDC's grievance procedures. Dkt. No. 23 at 1. Instead,
Plaintiff argues that, although GCDC had procedures in place for
inmates to file grievances, Plaintiff's mental health struggles
left him unable to comply with GCDC's grievance procedure. Id. at
1–2. Furthermore, Plaintiff contends that he was retaliated
against for filing grievances and thus the grievance procedure was
effectively unavailable to him. Id. at 2.

## A. Plaintiff's Grievances Were Deficient

Deputy Hill argues that Plaintiff's grievances for the
alleged use of excessive force on October 8, 2022, were deficient
for three reasons: (1) the grievances were not timely, (2) the
grievances were not filed in conformance with the GCDC's
procedures, and (3) Plaintiff failed to timely appeal his
grievances. Dkt. No. 18 at 6–8.

---

[6] At the hearing, both parties agreed that the Court may properly
consider information outside of the pleadings. Dkt. No. 26.

####     i.    Timeliness

GCDC's grievance policy provides that inmates have five days from the date of the complained of conduct to file a grievance. Dkt. No. 15-2 at 7. Defendants point to two grievances about the use of excessive force alleged in Plaintiff's complaint: Grievance No. 628388 and No. 628640. Both grievances were filed outside the requisite five-day period.

Grievance No. 628388 states, "I BEEN ASSAULTED BY OFFICER HILL IN I WOULD LIKE THE SHERIFF TO LOOK INTO THIS MY NOSE IS BROKEN BECAUSE OF THIS" and was filed on October 14, 2022. Dkt. Nos. 15-1 at 11, 15-4 at 195. The date of the complained of conduct is identified in Plaintiff's complaint as October 8, 2022. Dkt. No. 1 ¶ 11. Thus, Plaintiff's Grievance No. 628388 was not timely; he filed it six days after the incident instead of filing within the required five-day period. See Wright v. Langford, 562 F. App'x 769, 772, 776 (11th Cir. 2014) (stating that there was "no dispute" that plaintiff "did not timely file a grievance" when his grievance was filed six days after the incident instead of five days).

Plaintiff's other grievance pertaining to the alleged use of excessive force, Grievance No. 628640, states "I BEEN ASSAULTED BY AN OFFICER I NEED SHERIFF TO LOOK INTO THIS MY NOSE BROKE IM NOT GETTING NO MEDICAL TREATMENT IN ITS HURTING IN I CAN NOT BREATH," and was filed on October 17, 2022. Dkt. No. 15-4 at 205. This

grievance was also untimely because Plaintiff filed it nine days after the alleged October 8, 2022 incident. Dkt. No. 18 at 7.

### ii.  Grievances Did Not Conform with Policy

Even if Plaintiff's grievances about the alleged use of excessive force were timely, they were still defective for failing to comply with GCDC's grievance policy. Langford, 562 F. App'x at 776. The grievance procedure required inmates to include the "date, time, explanation of events, and names of those involved." Dkt. No. 15-3. Furthermore, duplicate grievances are prohibited. Id. Grievance No. 628388 properly identified that Deputy Hill was involved and contained a highly general statement about what happened but failed to include the date and time of the incident and thus did not conform with the pertinent procedure. Dkt. No. 15-4 at 195. Grievance No. 628640 failed to include *any* of the required information and was duplicative of Grievance No. 628388. As such, Grievance No. 628640 also failed to follow the required procedures. Plaintiff failed to satisfy the proper procedure set forth by GCDC for filing grievances and thus has not properly exhausted his administrative remedies. See Jones, 549 U.S. at 218; Bryant, 530 F.3d at 1378.

### iii. Failed Appeal

Further, GCDC's grievance policy provides that an inmate who wishes to appeal the findings of his grievance must do so within three days of receiving the Grievance Committee's findings and

action taken. Dkt. No. 15-2 at 8. Plaintiff did not appeal
Grievance No. 628388. Dkt. Nos. 15-2 ¶ 15; 15-4 at 195-96.
Plaintiff received GCDC's response to Grievance No. 628640 on
October 18, 2022, but he did not file an appeal until one week
later, on October 25, 2022. Dkt. No. 15-4 at 205-06. This exceeded
the three-day window to appeal.

**B. Excusal of Exhaustion**

Plaintiff argues that his claims should not be dismissed for
failure to exhaust his administrative remedies under the PLRA
because GCDC's procedures were effectively unavailable to
Plaintiff due to his mental health challenges. Dkt. No. 23 at 2.
As stated above, "defendants bear the burden of proving plaintiff
has failed to exhaust his administrative remedies." Turner, 541
F.3d at 1082. Once a defendant has met his burden, "the burden of
going forward shifts to the plaintiff, who, pursuant to Turner,
must demonstrate that the grievance procedure was 'subjectively'
and 'objectively' unavailable to him." Geter v. Baldwin State
Prison, 974 F.3d 1348, 1356 (11th Cir. 2020) (footnote omitted)
(citing Turner, 541 F.3d at 1085). "[T]he plaintiff may defeat the
failure-to-exhaust argument by showing that the general remedy was
effectively unavailable to him." Wright v. Dep't of Corr., 820 F.
App'x 841, 845 (11th Cir. 2020).

### i.  Defendant Hill met his initial burden.

In order to shift the burden to Plaintiff to show that remedies were unavailable to him, Deputy Hill must show two things. First, he must show that there is a "generally available" grievance remedy for inmates. A remedy is "generally available" if "a grievance procedure exists." Wright, 820 F. App'x at 845. Second, he must show that Plaintiff failed to exhaust those remedies.

Deputy Hill has demonstrated that a grievance procedure exists at GCDC and that Plaintiff was made aware of the grievance process. See Dkt. No. 15-3 (grievance procedure at GCDC). Undersheriff Morales attests that inmates are informed of the system when they are booked into the jail and that inmates can access the procedure details in the inmate handbook, which is available on the kiosks that are used to file grievances. Dkt. No. 15-2 ¶¶ 6-7. Additionally, it is evident that Plaintiff was aware of the procedure to file grievances, including appeals. He filed approximately 122 grievances during his time at GCDC in 2022, as well as several appeal statements. Id. ¶¶ 11, 21, 27; Dkt. No. 15-4 at 14, 38, 40, 44, 48, 50, 54, 62, 68. Plaintiff began filing grievances and appeal statements in March 2022, approximately seven months before he filed any grievances relating to the alleged assault and medical care issues. Dkt. No. 15-4 at 1. He continued to file grievances up until the day before the incident alleged in his complaint and began again six days after the incident, just

14

one day outside of the five-day timely filing period. Id. at 187, 189 (Grievance No. 627623 filed on October 7, 2022 and Grievance No. 628303 filed on October 13, 2022). Thus, although Plaintiff's grievances regarding the October 8, 2022 incident were untimely, the fact that he filed "close-in-time grievances demonstrate that he was aware of the grievance process and capable of submitting a completed grievance." Varner, 11 F.4th at 1260. Accordingly, Deputy Hill has established that there is a grievance procedure available at GCDC and that this process was available to Plaintiff.

Deputy Hill also demonstrated that Plaintiff failed to exhaust his administrative remedies. As discussed above, Deputy Hill showed that Plaintiff's grievances were untimely and did not comply with GCDC's grievance procedures. Furthermore, there is no evidence in the record to suggest that Plaintiff ever filed a grievance pertaining to his First Amendment claims. This is supported by the fact that at the hearing, when asked whether Plaintiff grieved his First Amendment contentions, counsel stated "not that I know of." Dkt. No. 26. Therefore, Plaintiff's grievances were not "properly exhausted" under the PLRA.

### ii.  Plaintiff's Burden

In Ross, the U.S. Supreme Court set forth "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief," or, in other words, is unavailable. 578 U.S. at 643. These

15

circumstances are (1) "when (despite what regulations or guidance materials may promise) [an administrative procedure] operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) an administrative procedure scheme is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can make sense of what it demands"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. The Eleventh Circuit has recognized that the only exceptions to the exhaustion requirement are the three set forth by Ross and has declined to apply "'judicially recognized'" exceptions that pre-dated the mandatory exhaustion requirement. Varner, 11 F.4th at 1262–64.

### 1. First Ross Exception

Plaintiff argues that GCDC's response to his grievance about the assault suggested that GCDC's procedure was a "dead-end" that provided no relief. Dkt. No. 26; Ross, 578 U.S. at 643. Specifically, Plaintiff asserts that his failure to exhaust is excused because GCDC told him that the GBI would be handling the assault investigation and instructed Plaintiff to direct any questions to that agency. Dkt. No. 15-4 at 195. Plaintiff characterizes GCDC's response as telling him to not contact GCDC for relief because they were not going to provide any—it was a "dead end." Ross, 578 U.S. at 643; Dkt. No. 26.

16

Plaintiff's argument hinges on two of his grievances: Grievance No. 628304 and Grievance No. 628388. Grievance No. 628304 was timely filed on October 13, 2022. Dkt. No. 15-4 at 191. In it, Plaintiff stated "MY NOSE KEEP HURTING AND I CANT SLEEP AT NOT DUE TOMTHE FACT ITS HARD AS HELL TO." Id. GCDC responded that the pain was normal and instructed Plaintiff to take his pain medicine and leave his nose alone. Id. This grievance was marked as "resolved" on October 14, 2022. According to the prison grievance policy, Plaintiff had three days to appeal GCDC's response, so the latest date to appeal was October 17, 2022. Dkt. No. 15-3.

Grievance No. 628388 was not timely filed. Dkt. No. 15-4 at 195. In it, Plaintiff stated "I BEEN ASSAULTED BY OFFICER HILL IN I WOULD LIKE THE SHERIFF TO LOOK INTO THIS MY NOSE IS BROKEN BECAUSE OF THIS." Id. GCDC responded on October 17, 2022, and stated "THIS INVESTIGATION IS BEING HANDLED BY THE STATE GBI AGENCY. ANY QUESTIONSCONCERNS WILL BE HANDLED BY GBI." Id.

Plaintiff argues that he did not appeal Grievance No. 628304, and therefore did not fully exhaust his remedies, because on the final day to appeal, October 17, 2022, GCDC responded to Grievance No. 628388 and suggested that Plaintiff would not obtain any relief. Dkt. No. 26. Even accepting that argument, Plaintiff's claim still fails. As discussed above, Grievance No. 628304 is also deficient for failure to conform to the grievance policy. To properly grieve a complaint, inmates must include the "date, time,

explanation of events, and names of those involved." Dkt. No. 15-
3. Grievance No. 628304 did not contain any of these details, and
Plaintiff provides no explanation why his belief about the
procedure amounting to a dead end, which developed on October 17,
2022, days after he filed this grievance, excuses these
deficiencies. Dkt. No. 15-4 at 191. Accordingly, even ignoring the
appeal deficiency considering the timing of GCDC's response to
Grievance No. 628388, Plaintiff's failure to exhaust is not
excusable under the first Ross exception.[7]

### 2. Second Ross Exception

Plaintiff contends that his mental health challenges left him
unable to comply with GCDC's requirements for filing grievances.
Dkt. Nos. 23 at 2; 23-1 ¶¶ 9–16. More specifically, Plaintiff

---

[7] Since Ross, courts have rejected the argument that a prison's
separate action with regard to an incident can excuse an inmate's
failure to use the available administrative grievance process as
the PLRA requires. See Griggs v. Holt, No. CV 117-089, 2018 WL
5283448, at *7 (S.D. Ga. Oct. 24, 2018) ("[A] related internal
investigation does not, by itself, satisfy the PLRA's exhaustion
requirement."), aff'd sub. nom. Varner v. Shepard, 11 F.4th 1252
(11th Cir. 2021). Indeed, "the PLRA exhaustion requirement
requires the prisoner to exhaust the remedies that are available
to *him*, not separate and independent administrative processes."
Id. at *7 (emphasis in original). If internal investigation
processes are insufficient to excuse a plaintiff's responsibility
to exhaust his remedies, then certainly an external investigation
process, such as that carried out by the GBI here, cannot
compensate for Plaintiff's failure to exhaust either. "To
determine whether a prisoner exhausted his administrative
remedies, the court must look to the inmate's grievance, not to
other information compiled in other investigations." Id. (citation
and quotations omitted).

argues that "if [he] failed to follow the jail rules concerning [his] grievances," then it is because "the lack of [his] medications adversely impacted [his] ability to accurately comply with the jail procedures" and he "could not navigate" the procedures without his medication. Id. ¶¶ 15–16. To the extent that Plaintiff argues "his mental health deficiencies made GCDC's grievance process 'so confusing or vague that it is "essentially unknowable"' to him," this argument fails. Dkt. No. 25 at 4.

Ross prohibits the Court from creating a "special circumstances" exception to exhaustion requirements, such as considering a plaintiff's medical condition when assessing whether his grievance was properly exhausted. 578 U.S. at 648. In Griggs, the plaintiff argued that "his medical condition prevented him from understanding the grievance process and the need to complain." 2018 WL 5283448, at *6.[8] The Griggs court found that this "argument must fail" and explained that this "harsh result" was "unavoidabl[e]" because of the Supreme Court's holding in Ross. Id. ("To hold, as [plaintiff] would have the Court do, that his inability to know that he needed to file a grievance about the

---

[8] The Griggs case involved motions from several plaintiffs that the court considered together. The portion of the court's order addressing exhaustion of administrative remedies under the PLRA involved plaintiff Varner. The district court dismissed Varner's claims, and Varner appealed to the Eleventh Circuit arguing "that there were no available administrative remedies, or, alternatively, that the remedies were exhausted." Griggs, 2018 WL 5283448, at *6; Varner, 11 F.4th at 1255.

incident makes a remedy unavailable to him would carve out a special circumstance for a particular plaintiff, a practice the Supreme Court unequivocally rejected in Ross."). The Ross Court concluded that the PLRA "refutes a 'special circumstances' exception to its rule of exhaustion" and precludes "judge-made exceptions" to the exhaustion requirement, even if Plaintiff contends that, due to his mental challenges, he could not understand the grievance process.[9] Ross, 578 U.S. at 639, 641.

Furthermore, this Ross exception relies on an objective standard. 578 U.S. at 644. In other words, the Court must consider whether an "ordinary prisoner" can understand the administrative procedure. Id. The Court must not take into account subjective considerations like "an inmate's special circumstances." Griggs, 2018 WL 5283448, at *6. The Glynn County undersheriff attested that inmates are informed of the grievance process when booked into GCDC and that they can access the inmate handbook, which contains the process and requisite time limits, on kiosks in the jail. Dkt. No. 15-2 ¶¶ 6-7. Plaintiff has provided no evidence to contradict this or to suggest ordinary inmates find the grievance procedure too complicated or confusing to use.

---

[9] In Plaintiff's affidavit where he asserts that his mental challenges impeded his ability to comply with the grievance procedure, Plaintiff also claims that "jail personnel refused to provide [him]" with his antipsychotic medications. Dkt. No. 23-1 ¶¶ 10, 12. However, none of Plaintiff's grievances contained a request for these medications.

Just like in <u>Griggs</u>, Plaintiff is asking the Court to make a special exception to the PLRA's exhaustion requirements for him. The Court cannot, and thus, rejects Plaintiff's argument.

### 3. Third <u>Ross</u> Exception

Finally, Plaintiff argues that the grievance process was unavailable to him because "Defendant Hill would threaten, harass, and intimidate [him.]" Dkt. No. 23-1 ¶ 18. In other words, Plaintiff contends prison officers like Deputy Hill tried to "thwart" inmates from utilizing the grievance process via intimidation. <u>Ross</u>, 578 U.S. at 643. In <u>Turner</u>, the Eleventh Circuit held that

> a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

541 F.3d at 1085.

Plaintiff cannot satisfy either prong of this test. First, Plaintiff avers that he *did* report Defendant Hill's alleged excessive force to GCDC authorities and that he filed two grievances pertaining to the "initial attack" and his injuries. Dkt. No. 23-1 ¶¶ 5–6; <u>see also, e.g.,</u> Dkt. No. 15-4 at 195, 205

21

(identifying that Plaintiff was assaulted). As discussed above, Plaintiff's first grievance, though timely, was deficient, and his second grievance was untimely.[10] Second, Plaintiff fails to show that Defendant Hill's "threats," id. ¶ 17, would "deter a reasonable inmate of ordinary firmness and fortitude" from filing a grievance or pursuing a step of the grievance process, Turner, 541 F.3d at 1085.[11] In his affidavit, Plaintiff states that Deputy Hill "threaten[ed], harass[ed], and intimidate[d] [him.]" Dkt. No. 23-1 ¶ 18. Other than these conclusory statements, Plaintiff also asserts in his affidavit that Deputy Hill "would mock [him], [and] mak[e] fun of [his] injuries and [his] complaints to the administration, asserting that nothing was going to come of [his] complaints." Id. ¶ 19. Even accepting this as true, Plaintiff has

---

[10] At the hearing, the Court asked Plaintiff's attorney why Plaintiff's fear of retaliation by Deputy Hill was present during the five days after the attack, thereby precluding Plaintiff from making a timely grievance, but was not present on the sixth day after the attack, when Plaintiff filed Grievance No. 628388 that named Deputy Hill as his attacker. In response, Plaintiff's attorney said he "wished he had an answer for that." Dkt. No. 26.
[11] Even if the Court considered the possibility that Defendant Hill's threats might have deterred Plaintiff from pursuing a later step in in the grievance process, such as an appeal, this too is unsupported. In Grievance No. 628640, Plaintiff stated he was assaulted by an officer and was not getting medical treatment. Dkt. No. 15-4 at 205. In response to the Grievance Committee's review and findings, Plaintiff submitted an appeal statement, albeit an untimely one. Id. at 206. Thus, even considering later steps of the grievance process, Plaintiff still fails to show that Defendant Hill's threats would have deterred "a reasonable inmate of ordinary firmness and fortitude from filing a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." Turner, 541 F.3d at 1085.

failed to show how being mocked amounts to "actual threats of retaliation that deterred him from pursuing his grievance that would deter an 'inmate of ordinary firmness' from pursuing a remedy." Williams v. Barrow, 559 F. App'x 979, 988 (11th Cir. 2014) (quoting Turner, 541 F.3d at 1085). Because Plaintiff is unable to establish either Turner prong, he fails to show that GCDC officers tried to "thwart" him from utilizing the grievance process through intimidation. Ross, 578 U.S. at 643.

At bottom, even accepting Plaintiff's allegations in his complaint and affidavit as true, Plaintiff fails to carry his burden to show that he exhausted his administrative remedies or is excused from doing so under a Ross exception.[12] Plaintiff's individual capacity claims must, therefore, be dismissed. The Court realizes this is a harsh result, especially in light of the facts alleged in this case. While the Court is sympathetic to Plaintiff, no other outcome may be properly reached based on the state of PLRA law today. Accordingly, Defendant Hill's motion to dismiss Plaintiff's individual capacity claims against him is **GRANTED**, and these claims are **DISMISSED**.

---

[12] Because Defendant is entitled to dismissal due to Plaintiff's failure to exhaust his administrative remedies, the Court need not reach the second step set forth under Turner and Bryant. Turner, 541 F.3d at 1083.

## II.  Eleventh Amendment Immunity

Plaintiff sets forth claims against Deputy Hill in his official capacity as well. Deputy Hill argues that all claims asserted against him in his official capacity should be dismissed on the grounds of Eleventh Amendment immunity and because he is not a "person" within the meaning of 42 U.S.C. § 1983. Dkt. No. 15-1 at 17–19. Plaintiff does not contest these arguments.

"The Eleventh Amendment protects a State from being sued in federal court without the State's consent." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (analyzing Eleventh Amendment immunity of a Georgia sheriff). The Eleventh Amendment bars federal law claims when a state itself is sued or when an "arm of the State" is sued. Id.[13] "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id. The Eleventh Circuit analyzes

---

[13] Defendant Hill argues, correctly, that in his official capacity, he is not a "person" subject to suit under § 1983. Dkt. No. 15-1 at 19. When a plaintiff sues a state officer in his official capacity, that suit is considered a suit against the state, or an arm of the state, and "a State is not a 'person' within the meaning of § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 65, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (citations omitted)). Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66. Unless a state waives immunity, such suits are barred by the Eleventh Amendment. Id.

four factors to determine whether an entity is an "arm of the State" in carrying out a particular function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309.

First, under the Georgia Constitution, "a Georgia sheriff's office is independent from the county in which it sits, and is subject to control by the state legislature." Townsend v. Coffee Cnty., 854 F. Supp. 2d 1345, 1351 (S.D. Ga. 2011) (citing Manders, 338 F.3d at 1310). "In contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function," and this rule extends to sheriffs' deputies who are "employees of the sheriff, not the county." Grech v. Clayton Cnty., 335 F.3d 1326, 1336 (11th Cir. 2003). Moreover, "[t]he sheriff's authority to use force or the tools of violence, whether deadly or non-deadly force, and the sheriff's obligation to administer the jail are directly derived from the State and not delegated through the county entity." Manders, 338 F.3d at 1319. The "use of force and creating force policy are quintessential policing functions, exercised by sheriffs in initial arrests, in subduing inmates in sessions of state superior courts, or in quelling disruptive inmates in county jails." Id. Thus, the fact that Georgia law places sheriffs' offices under state, not county, control means the first factor weighs in favor of granting Eleventh

Amendment immunity to Deputy Hill. So, too, does the fact that the sheriff's authority to use force and create force policy are state-related powers associated with police functions. Additionally, because Georgia has "direct and substantial control" over the sheriffs' offices, the second factor also weighs "heavily in favor" of granting immunity. Manders, 338 F.3d at 1322.

The third factor cuts both ways because while counties bear "the major burden of funding" sheriffs' offices, that funding is mandated by the state, and the state separately funds sheriffs' annual training, provides for the Governor's disciplinary procedure over sheriffs for use of excessive force, and pays for certain state offenders in sheriff-supervised county jails. Id. at 1323. Indeed, in Georgia, counties "cannot dictate how [sheriffs] spend" the state-mandated budget funding. Id. The Eleventh Circuit found in Manders that, compared to a county's "attenuated" financial control, "state involvement is sufficient to tilt the third factor . . . toward immunity." Id. at 1323-24.

Finally, the fourth factor looks to who is responsible for judgments against a sheriff's office. "[A] Georgia *county* is not monetarily responsible for judgments against a sheriff in tort or civil rights actions, but there is no law expressly requiring the *state* to pay such a judgment, so a sheriff would have to pay that judgment out of his sheriff's office budget." Townsend, 854 F. Supp. 2d at 1351-52 (emphasis added) (citing Manders, 338 F.3d at

1327). "Thus, in a way, both county and state funds might be implicated if a judgment were entered against [the sheriff]." Id. at 1352. However, "a purpose of the Eleventh Amendment is to 'accord[] the States the respect owed them as members of the federation' and not to affront the 'dignity' or 'integrity' of a state by requiring a state to respond to lawsuits in federal courts." Manders, 338 F.3d at 1327. As such, the consideration of a state's integrity—in terms of who is financially responsible when a sheriff is sued in federal court—cuts against immunity. But a "State's 'integrity' is not limited to who foots the bill, and, at a minimum, the liability-for-adverse-judgment factor does not defeat [a sheriff's] immunity claim." Id. at 1328.

Based on these factors, the Eleventh Circuit found in Manders that a sheriff was an "arm of the State" with regard to his use-of-force policy at a jail. Id. Similarly, here, Plaintiff's claims against Deputy Hill pertain to the use of force and force policy at GCDC. Dkt. No. 1 ¶¶ 11-14, 16, 20 (Plaintiff alleges that he was "violently attacked" without justification and that during the course of this "beating" the detention officers used "unreasonable and excessive force.").

Further, "[a] deputy's functions are derived from the sheriff's functions." Lake v. Skelton, 840 F.3d 1334, 1342 (11th Cir. 2016). Thus, the deputy's performance of the same function as the sheriff can also constitute a "state function." Id. The

27

Eleventh Circuit has held that sheriffs' deputies can wear a "state hat" when engaging in functions similar to those of a sheriff. For instance, in Lake, the court concluded that "[b]ecause the sheriff wears a 'state hat' when he denies an inmate's dietary request, and because a deputy receives all of his powers and obligations with respect to feeding inmates from the sheriff, . . . a deputy also wears a 'state hat' when he denies an inmate's dietary request." 840 F.3d at 1342. Similarly, in this case, because the Glynn County Sheriff wears a "state hat" when exercising his authority to use force or create force policy at GCDC, so, too, does Deputy Hill. Id.; Manders, 338 F.3d at 1319. As such, Eleventh Amendment protections extend to Deputy Hill. Accordingly, Plaintiff's claims against Deputy Hill in his official capacity are barred by Eleventh Amendment immunity, and Defendant Hill's motion to dismiss those claims is **GRANTED**.

## CONCLUSION

To be sure, the Court *does not* find that Defendant Hill acted appropriately. All the Court *does* find is that Plaintiff failed to properly exhaust his administrative remedies within GCDC before filing suit and none of the Ross exceptions excuse this failure. Further, Plaintiff's official capacity claims against Defendant Hill are barred by the Eleventh Amendment. Accordingly, Deputy Hill's motion to dismiss Counts I(a), I(b) and III, dkt. no. 18, is **GRANTED**.

The only remaining claims in this federal action are pending against Defendants John Does. Plaintiff is hereby **ORDERED**, within **fourteen (14) days** of the date of this Order, to **show cause** for his failure to serve John Does within the time limit provided by Federal Rule of Civil Procedure 4(m). Plaintiff's failure to adequately respond to the Court's Order will result in the dismissal of this action. <u>See</u> Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

**SO ORDERED**, this 14th day of July, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA